# 14-1212-cv

# United States Court of Appeals
### *for the*
# Second Circuit

AMERICAN HOME ASSURANCE COMPANY,
as subrogee of Crown Equipment Corporation,

*Plaintiff-Appellant,*

v.

A.P. MOLLERMAERSK A/S, and/or Maersk Lines
doing business as MaerskSealand,

*Defendant-Appellee,*

*(For Continuation of Caption See Inside Cover)*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

PAUL D. KEENAN
CHRISTOPHER J. MERRICK
KEENAN COHEN & MERRICK, P.C.
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, Pennsylvania 19046
(215) 609-1110

*Attorneys for Defendant-Appellee*

---

A.P. MOLLERMAERSK A/S, and/or Maersk Lines,

*Third-Party-Plaintiff-Cross-Defendant*,

BNSF RAILWAY COMPANY,

*Third-Party-Defendant-Counter-Defendant*,

PANALPINA, INC.,

*Defendant-Cross-Claimant-Counter-Claimant*.

---

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendant – Appellee A.P. MollerMaersk A/S and/or Maersk Lines d/b/a Maersk Sealand ("Maersk") states that there is no parent corporation or any publicly held corporation that owns 10% or more of Maersk's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF JURISDICTION...............................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .........................................2

STATEMENT OF THE CASE...................................................................3

    I.    Material Facts ....................................................................3

    II.   Procedural History................................................................5

SUMMARY OF THE ARGUMENT ...............................................................11

ARGUMENT ..............................................................................14

    I.    Whether Maersk Assumed Contractual Liability for BNSF's
        Negligence Is A New Legal Theory That May Not Be Raised
        In The First Instance On Appeal ................................................15

    II.   American Home's Contract Claims Are Preempted By
        Federal Statute .................................................................17

    III.  American Home Lacks Standing To Sue Maersk For Breach
        of Contract .....................................................................20

    IV.   Even If It Could Proceed With A Direct Action Against
        Maersk, American Home's Maximum Recovery Would Be
        Limited to $500 Per Package ....................................................26

        A.    The Limited Liability Terms Applicable to The Subject
                Shipments Limit Maersk's Liability To $18,500 ...................27

        B.    Application Of COGSA Liability Terms Is Consistent
                With The Policy Objectives Articulated By The U.S.
                Supreme Court .....................................................30

V.    If American Home Wishes to Litigate The Issue of BNSF's Negligence Under New York Law, This Matter Should Be Remanded To The District Court So That Maersk Can Develop Evidence And Present A Defense To These New Claims ............................................................................... 32

VI.   American Home's Arguments Concerning Whether BNSF Was Properly Dismissed By Stipulation Are Moot ........................... 36

VII.  Conclusion ........................................................................ 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aluminios Pozuelo Ltd. v. S. S. Navigator*,
  407 F.2d 152 (2d Cir. 1968) ........................................................29

*Aramony v. United Way of America*,
  254 F.3d 403 (2d Cir. 2001) ........................................................28

*Calvin Klein Ltd. v. Trylon Trucking Corp.*,
  892 F.2d 191 (2d Cir. 1989) ........................................................31

*CDJ Builders Corp. v. Hudson Group Constr. Corp.*,
  67 A.D.3d 720, 889 N.Y.S.2d 64 (2d Dep't 2009) ......................21

*Chitkara v. New York Tel. Co.*,
  45 F. App'x 53 (2d Cir. 2002) ......................................................16

*Clark–Fitzpatrick, Inc. v. Long Island R.R.*,
  70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ........34

*Cleveland v. Beltman N. Am. Co., Inc.*,
  30 F.3d 373 (2d. Cir. 1994) ........................................................18

*CNA Ins. Co. v. Hyundai Merch. Marine Co.*,
  747 F.3d 339 (6th Cir. 2014) ..........................................25, 26, 34

*Crabtree v. Tristar Auto. Group, Inc.*,
  776 F. Supp. 155 (S.D.N.Y. 1991) ........................................20, 21

*East River S.S. Corp. v. Transam. Delaval Inc.*,
  476 U.S. 858 (1986) ....................................................................34

*Epicentre Strategic Corp. - Mich. v. Cleveland Constr.*,
  2007 U.S. Dist. LEXIS 15971, 2007 WL 715297
  (E.D. Mich. Mar. 7, 2007) ............................................................37

*Galt G/S v. Hapag-Lloyd A.G.*,
  60 F.3d 1370 (9th Cir. 1995) ........................................................37

*General Foods Corp. v. Jay V. Zimmerman Co.*,
  1990 U.S. Dist. LEXIS 10156, 1990 WL 115714
  (S.D.N.Y. Aug. 3, 1990) ..............................................................38

iv

*Guest v. Hansen,*
603 F.3d 15 (2d Cir. 2010) ........................................................................33

*Gurary v. Winehouse,*
190 F.3d 37 (2d Cir. 1999) ........................................................................16

*Hamilton v. Beretta U.S.A. Corp.,*
96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001) .........................34

*Hartford Fire Ins. Co. v. Expeditors Int'l of Wash.,*
2012 U.S. Dist. LEXIS 96974, 2012 WL 2861433
(S.D.N.Y. July 9, 2012) ........................................................................ 19-20

*Hoskins v. Bekins Van Lines,*
343 F.3d 769 (5th Cir. 2003) .....................................................................18

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.,*
38 F.3d 1279 (2d Cir. 1994) ......................................................................34

*Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.,*
130 S. Ct. 2433 (2010).........................................................................19, 30

*Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.,*
861 F. Supp. 2d 120 (W.D.N.Y. 2012) .......................................................21

*LaBarte v. Seneca Resources Corp.,*
285 A.D.2d 974, 728 N.Y.S.2d 618 (4th Dep't 2001) .................................21

*Leonard v. Gateway II, LLC,*
68 A.D.3d 408, 890 N.Y.S.2d 33 (1st Dep't 2009).....................................21

*Lerner v. Fleet Bank, N.A.,*
459 F.3d 273 (2d Cir. 2006) ......................................................................33

*Logan–Baldwin v. L.S.M. General Contractors, Inc.,*
31 Misc. 3d 174, 914 N.Y.S.2d 617
(N.Y. Sup. Ct., Monroe Cnty. 2011) ...........................................................21

*Missouri Pacific R.R. v. Porter,*
273 U.S. 341 (1927)...................................................................................18

*Mitsui Sumitomo Ins. Co. v. Evergreen Marine Corp.,*
621 F.3d 215 (2d Cir. 2010) ......................................................................17

*Murray v. City of New York,*
333 F. App'x 595 (2d Cir. 2009) ................................................................16

*Nipponkoa Ins. Co. v. Towne Air Freight, LLC*,
    2009 U.S. Dist. LEXIS 93525 (E.D. Mo. Oct. 7, 2009)..........................35, 36

*Norfolk Southern Railway Co. v. Kirby*,
    543 U.S. 14 (2004)..................................................................................*passim*

*Prima U.S. Inc. v. Panalpina, Inc.*,
    223 F.3d 126 (2d Cir. 2000) ......................................................................24

*Project Hope v. M/V Ibn Sina*,
    250 F.3d 67 (2d Cir. 2001) ........................................................................18

*Railroad Co. v. Elmore & Stahl*,
    377 U.S. 134 (1964)...................................................................................32

*Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.*,
    547 F.3d 351 (2d Cir. 2008) ...............................................................17, 19

*Rothstein v. City of New York*,
    2011 WL 3273473 (S.D.N.Y. July 29, 2011).............................................33

*Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.*,
    612 F.3d 138 (2d Cir. 2010) ................................................................3, 4, 5

*Royal & Sun Alliance Ins., PLC v. Serv. Transfer, Inc.*,
    2012 U.S. Dist. LEXIS 172307, 2012 WL 6028991
    (S.D.N.Y. Dec. 4, 2012) .............................................................................19

*Royal Ins. Co. of Am. v. Zygo Corp.*,
    212 F.R.D. 444 (D. Conn. 2003) ................................................................37

*Seaver v. Ransom*,
    224 N.Y. 233, 120 N.E. 639 (1918) ...........................................................21

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014) .......................................................................37

*Standard Electrica v.*
    *Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft*,
    375 F.2d 943 (2d Cir. 1967) .......................................................................29

*The Capitaine Faure*,
    10 F.2d 950 (2d Cir. 1926) .........................................................................24

*Thorp v. Scarne*,
    599 F.2d 1169 (2d Cir. 1979) .....................................................................38

*Travelers Indem. Co. v. Vessel Sam Houston*,
26 F.3d 895 (9th Cir. 1994) ........................................................................14

*United Food & Commercial Workers Union, Local 919 v.*
*Centermark Properties Meriden Square*,
30 F.3d 298 (2d Cir. 1994) .............................................................................1

*United States v. Barnes*,
107 F.3d 4 (2d Cir. 1997) .......................................................................17, 28

*Walter E. Heller & Co. v. Am. Flyers Airline Corp.*,
459 F.2d 896 (2d Cir. 1972) .........................................................................16

*Windows, Inc. v. Jordan Panel Sys. Corp.*,
177 F.3d 114 (2d Cir. 1999) .........................................................................18


**Statutes & Other Authorities:**

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1332(a) ...........................................................................................1

28 U.S.C. § 1333 ...............................................................................................1

28 U.S.C. § 1337 ...............................................................................................1

46 U.S.C. § 30701 ....................................................................................*passim*

49 U.S.C. § 10101 .............................................................................................1

49 U.S.C. § 10502 .......................................................................................6, 14

49 U.S.C. § 11706 .....................................................................................1, 2, 6

2 WILLISTON ON CONTRACTS § 273 (3d ed. 1959 & 1983 Supp.) .........................20

2 WILLISTON ON CONTRACTS § 347 (3d ed. 1959 & 1983 Supp.) .........................20

2 WILLISTON ON CONTRACTS § 793 (3d ed. 1959 & 1983 Supp.) .........................20

3 JAMES W. MOORE, Moore's Federal Practice § 14.06(1) ...............................37

CPLR § 1411.....................................................................................................34

Fed. R. App. P. 4(a)(1).....................................................................................38

Fed. R. Civ. P. 41(a)(1)(A)(ii)......................................................................6, 7

RESTATEMENT (SECOND) OF CONTRACTS § 203(c) (1981)..................................28

## STATEMENT OF JURISDICTION

Defendant – Appellee A.P. MollerMaersk A/S and/or Maersk Lines d/b/a MaerskSealand ("Maersk") agrees with Appellant that, having determined that the Carmack Amendment (49 U.S.C. § 11706) was applicable to the shipments at issue, the district court possessed subject matter jurisdiction over this case under 28 U.S.C. § 1337. This statute provides a district court with original jurisdiction over civil actions arising under the Interstate Commerce Act, 49 U.S.C. §§ 10101, *et seq*. Maersk also agrees that the district court had diversity jurisdiction under 28 U.S.C. §1332(a) as the amount in controversy exceeds $75,000.00 and is between entities incorporated under the laws of, and residing in, different states.

Maersk disagrees that Appellant asserted any admiralty or maritime claim under Rule 9(h) in the district court, and therefore also disputes that the district court possessed jurisdiction under 28 U.S.C. §1333. (A-891 to 897).[1]

Maersk agrees that this Court has jurisdiction under 28 U.S.C. § 1291 to the final Order entered by the trial court dated March 31, 2014 and that Appellant filed a timely Notice of Appeal with the trial court on April 17, 2014.

---

[1] Despite what is alleged by American Home, an admission in Maersk's Answer to the Complaint did not confer admiralty jurisdiction on the trial court. *See United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square*, 30 F.3d 298, 303 (2d Cir. 1994) ("Litigants . . . cannot waive subject matter jurisdiction by express consent, conduct, or estoppel because they fail to challenge jurisdiction early in the proceedings."). And Judge Jones's February 2011 Order finding Carmack applicable to the exclusion of maritime contract law and COGSA rendered maritime jurisdiction a moot issue in the district court.

1

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. May appellant American Home Assurance Company ("American Home") assert new state-law legal theories on appeal that were never raised or presented to the trial court?

2. Are American Home's state law claims for negligence and breach of contract preempted by the Carmack Amendment (49 U.S.C. § 11706) due to the trial court's accepting American Home's argument that Carmack is the governing statutory legal regime, and the fact that this ruling is not among the orders being appealed?

3. Can Maersk be held liable to American Home for breach of contract under New York law when American Home's subrogor had no privity of contract with Maersk?

4. If Maersk has any liability to American Home, is that liability contractually limited to $500 per package, or $18,500 in total?

5. Must Maersk now prepare and present defenses to the new state law claims now being raised by American Home for the first time on appeal?

## STATEMENT OF THE CASE

**I.    Material Facts**[2]

On or about December 15, 2006, Crown Equipment, Inc. ("Crown"), shipped three individual containers of forklifts, platform lifts, pallet trucks, and spare parts for transportation from its facilities in Ohio and Indiana to Australia. (A-231 to 247). Crown's Non-Vessel Operating Common Carrier ("NVOCC") Panalpina, Inc. ("Panalpina"),[3] engaged the services of John Cheesman Trucking & BTT to transport the three containers by tractor trailer from Crown's facilities in Greencastle, Indiana and New Breman, Ohio to the BNSF Railway Company's ("BNSF") Logistics Park in Elwood, Illinois. (A-752 to 753, 773).

Panalpina contracted with A.P. Moller-Maersk A/S ("Maersk"), an ocean carrier, to arrange transport from the BNSF Logistics Park to Australia. (A-222 to 225).   The shipments of these three containers were all booked pursuant to the terms of a generally-applicable service contract between Maersk and Panalpina. (A-225, 249 to 257).   Crown is not a party to this contract.   (*Id.*). In the service

---

[2]  The facts pled herein are generally identical to the facts appearing in Maersk's Rule 56.1 Statement in Support of Summary Judgment (A-937 to 940), which were admitted by American Home (A-944 to 946).

[3]  A NVOCC by water is "one who holds himself or herself out to provide transportation for hire" but "does not operate the vessel on which the goods are transported". *Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 140 n.2 (2d Cir. 2010).  A NVOCC "will issue a bill of lading to the shipper but does not undertake the actual transportation of the cargo.  Instead the NVOCC delivers the shipment to an ocean carrier for transportation." *Id.*

contract, Maersk agreed to provide carriage for Panalpina "on vessels owned, operated, chartered, leased or subject to vessel sharing arrangements by or with Maersk Line within the geographic scope of [the Service Contract] during the term of this Contract".  (A-251).

Maersk, in turn, engaged the services of BNSF to perform rail carriage for the shipments from the BNSF Logistics Park to California where the shipments were to be loaded upon Maersk's vessels, MAERSK NOVAZZANO and HANSA BERGEN, for international ocean carriage to Australia.  (A-226 to 227, 753, 773). BNSF transported the shipments under the terms of a generally applicable Intermodal Transportation Agreement with Maersk, and its incorporated Intermodal Rules.  (A-753, 102 to 113, 115 to 220).

Maersk did not issue a hard copy intermodal through bill of lading to any entity for any of the shipments. [4]  (A-223).  For shipments of this nature, it is Maersk's practice only to issue such a hard copy bill of lading at the time the goods are loaded on board the ocean vessel, which did not occur here.  (*Id.*)

_____

[4] The term "intermodal" indicates that the shipment involved "multiple modes of transport - that is, more than one of truck, rail, sea, and air." *Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.,* 612 F.3d 138, 141 n.4 (2d Cir.  2010).

A bill of lading is a document which "records that a carrier has received goods from the party that wishes to ship them, states the terms of the carriage, and serves as evidence of the contract for carriage." *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 20 (2004).

Maersk did, however, electronically generate bills of lading (actually ocean waybills) as part of its internal procedure based on its standard template form. (*Id.*)[5]  Panalpina is identified as the customer and the shipper on each bill of lading. (A-235, 240, 246).  Crown is not mentioned on any bill of lading.  (*Id.*).  These electronic bills of lading were "through bill[s] of lading covering cargo for the entire course of an intermodal shipment beginning at an inland location in the United States and continuing to three locations in Australia".  (*Id.*; A-755).  There was no shipping document issued by BNSF to Crown for any shipment.  (A-753).

On December 22, 2006, BNSF's train carrying Crown's containers derailed prior to reaching the port in California, damaging the three containers and their contents.  (A-227).  As a result, the shipping containers were never loaded into Maersk's vessels.  (*Id.*)  Crown filed a claim with its insurance company, appellant American Home Assurance Company ("American Home") for the damaged cargo. (A-25 to 30).  American Home then filed suit against Maersk and Panalpina for the damage to the cargo in November 2007.  (*Id.*)

## II.    Procedural History

Shortly after suit was filed, Maersk filed a Third-Party Complaint against BNSF.  (A-38).  Because it appeared that American Home was pursuing remedies

---

[5] An ocean waybill operates in the same way as a bill of lading, except that it is non-negotiable.  *See*, *e.g.*, *Royal & Sun Alliance Ins., PLC v. Ocean World Lines*, Inc., 612 F.3d 138, 142 n.6 (2d Cir. 2010).

pursuant to a maritime contract and the Carriage of Goods by Sea Act ("COGSA", 46 U.S.C. § 30701, *et seq.*), Maersk invoked maritime impleader procedures in its Third-Party Complaint. (*Id.*) On February 13, 2009, American Home presumably settled its claim with Panalpina and agreed to dismiss its claims against Panalpina by stipulation pursuant to FED. R. CIV. P. 41(a)(1)(A)(ii). (A-312 to 313).

On November 13, 2009, BNSF moved for Partial Summary Judgment, seeking a determination that its liability is limited to the COGSA $500 per package limitation of liability. (SPA-5). On the same date, Maersk moved for partial summary judgment and declaratory judgment seeking, *inter alia*, indemnity from BNSF for any liability to American Home. (*Id.*) American Home defended against these motions by declaring and arguing that all claims at issue in the case were governed by the Carmack Amendment (49 U.S.C. § 11706), to the exclusion and preemption of state contract law and COGSA. (*Id.*)

On February 16, 2011, Judge Barbara Jones denied BNSF's motion and Maersk's motion. (A-750 to 767). Judge Jones adopted American Home's position that Carmack is statutorily applicable, and the governing legal regime for the shipments at issue, not COGSA. (*Id.*) Judge Jones also found that BNSF did not properly contract for limited Carmack liability under the Staggers Rail Act (49 U.S.C. § 10502). (*Id.*). Judge Jones denied Maersk's motion against BNSF as premature. (*Id.*).

On March 9, 2012, American Home moved for summary judgment on liability and damages, asserting that BNSF and Maersk were both statutorily liable pursuant to Carmack (notwithstanding the fact that American Home had pled no direct claim against BNSF whatsoever). (SPA-7). Before this motion was decided, on December 11, 2012, Maersk and BNSF executed a Stipulation dismissing Maersk's Third-Party Complaint against BNSF, in its entirety, pursuant to FED. R. CIV. P. 41(a)(1)(A)(ii). (*Id*.). American Home objected to this dismissal because Maersk and BNSF (the parties to the third-party claim) did not first obtain American Home's consent, and American Home claimed to have standing to object to the stipulation under maritime rule 9(h). (*Id*.).

On January 4, 2013, Judge Jones issued an order rejecting the proposed stipulation of dismissal. (SPA-7). Judge Jones held that her "decision regarding the scope of BNSF's liability under the Carmack Amendment did not alter the maritime nature of American Home's claims." (*Id*.) That same day, Judge Jones retired from the bench. (SPA-8).

BNSF sought reconsideration of this ruling, and on March 12, 2013, Chief Judge Loretta A. Preska (to whom this matter was temporarily reassigned) accepted this Stipulation of Dismissal over American Home's objection and Ordered BNSF dismissed from this action. (Id., A-891 to 897). Judge Preska declined to revisit Judge Jones's earlier summary judgment determination, but she

7

concluded that the January 4, 2013 order was erroneous. (*Id*.). Judge Preska also rejected American Home's attempt to recast its claim against Maersk as a maritime contract claim, given Judge Jones's ruling and American Home's own representations that Carmack "governs the entire scope of Plaintiff's claims and that such claims are non-maritime in nature." (A-895, n.5). Accordingly, Judge Preska vacated Judge Jones's January 4, 2013 order and "so ordered" the stipulation dismissing BNSF. (SPA-8).

Judge Preska then stayed further briefing regarding American Home's summary judgment motion, and granted Maersk permission to move for summary judgment and permission to file a supplemental response to American Home's summary judgment motion. (*Id*.).

In its affirmative motion, Maersk pointed out that Judge Preska's March 12, 2013 Order recognized that it was the law of the case that the Carmack Amendment statutorily "governs the entire scope of Plaintiff's claim." (SPA-10). Accordingly, American Home was required to demonstrate that the Carmack Amendment provides a statutory cause of action against an ocean carrier such as Maersk. (*Id*.)

Despite its numerous filings to the contrary, and Judge Preska's ruling, American Home abruptly changed its course, and responded with a new argument that Maersk *contracted into* Carmack liability because it "expressly agreed to be

8

bound by the liability regime which would govern the inland carrier in whose custody the loss or damage occurred." (SPA-11). Relevant to this appeal, Maersk argued in its supplemental response to American Home's summary judgment motion, and American Home offered did not attempt to refute, that American Home could not pursue any possible breach of contract claim against Maersk because there is no contractual privity between Maersk and Crown. (Trial Ct. Dkt. No. 120 at p.2).

This case was transferred to Judge Paul G. Gardephe on May 29, 2013. (SPA-9). On September 26, 2013, Judge Gardephe reviewed the parties' briefs on all motions, and denied American Home's motion for summary judgment without prejudice, finding that Maersk's summary judgment motion presented a potentially dispositive issue that might obviate the need to rule on American Home's motion. (*Id*.) If ocean carriers are not among the entities a cargo owner may sue under Carmack, it would be unnecessary for the trial court to proceed to a determination of whether American Home had established the elements required for Carmack liability as a matter of law. (*Id*.)

On March 31, 2014, Judge Gardephe granted Maersk's motion for summary judgment in its entirety and directed that judgment be entered on behalf of Maersk. (SPA-1 to 19). Judge Gardephe found that it was already the law of the case that Carmack was the governing legal liability regime, pursuant to arguments

9

previously advanced by American Home. (SPA-18). Judge Gardephe found that ocean carriers like Maersk are not subject to statutory Carmack liability, and rejected American Home's belatedly-asserted argument that Maersk somehow contracted into Carmack liability under its bill of lading. (*Id*.)

American Home now appeals Judge Gardephe's March 31, 2014 Order granting Maersk's motion for summary Judgment, and Judge Gardephe's September 26, 2013 Order denying American Home's motion for summary judgment. (Appeal Dkt. No. 1). The Orders by Judge Jones and Judge Preska, which found that Carmack is the governing legal regime, and preempts remedies under breach of contract, are not among the Orders being appealed to this Court. (*Id*.)[6]

---

[6] While American Home's brief complains that BNSF should not have been dismissed from this case, American Home does not seek to appeal Judge Preska's March 2013 Order dismissing BNSF. (*See* Dkt. No. 1). BNSF is also not a party to this appeal, and American Home has never argued that BNSF should be joined as appellee.

## SUMMARY OF THE ARGUMENT

The penultimate paragraph of Judge Paul G. Gardephe's Opinion concisely and accurately summarizes why summary judgment was appropriately granted in favor of Maersk in the district court:

> Having prevailed on its argument that the Carmack Amendment governs this case, American Home must live with the consequences. The applicability of the Carmack Amendment here is the law of the case, as is Judge Preska's ruling that 'the Carmack Amendment provides the exclusive remedy for a shipper's compensation for actual loss or injury.' Given that the Carmack Amendment does not apply to an ocean carrier such as Maersk, and given that Maersk did not contractually agree to be bound by the liability regime set forth in the Carmack Amendment, American Home has no claim under the Carmack Amendment against Maersk.

(SPA 18) (internal citation omitted).

But in this appeal, filed *more than six years* after American Home's Complaint, American Home now announces to Maersk and this Court that "this is a breach of contract case" governed by New York state law.  (Dkt. 42 at p. 5).  The applicability of the Carmack Amendment, whether statutorily or via contract, is now "an issue that need not even be resolved." (Id. at 22).  This Court has repeatedly rejected attempts by appellants to litigate new theories on appeal after their district court theories have proven unsuccessful.  This Court should similarly reject American Home's attempts to transform its claims here and deny its appeal on this basis.

11

Should this Court nonetheless allow American Home to transform its case against Maersk and litigate new theories on appeal, these new theories would remain preempted.  When applicable, the Carmack Amendment provides the *exclusive* remedy for a shipper's compensation for actual loss or injury.  (A-894) This specifically includes state law contract and negligence claims claims. Here the trial court has already ruled, at American Home's own urging, that Carmack is the applicable statutory regime for these claims.  These rulings are not among the rulings that American Home seeks to have overturned on appeal. So this Court may affirm the ruling of Judge Gardephe, dismissing American Home's claims against Maersk, on preemption grounds without need to consider the substantive merits of its new contract and negligence arguments.

Even if this Court were to allow American Home to essentially amend its claims on appeal, and *sua sponte* overrule the trial court orders finding that Carmack is applicable and American Home's exclusive remedy, American Home's new contract and negligence theories also fail on their merits. The reason American Home did not litigate the instant breach of contract claim before the district court is clear – neither American Home nor its insured is a party to any contract with Maersk.  American Home contracted with Panalpina, the NVOCC for these shipments.  There is no assignment of rights appearing in the record, nor does American Home claim to have received any assignment from Panalpina.

12

Accordingly, in the absence of statutory Carmack liability, American Home has no standing to pursue a common law contract claim against Maersk.

And even if American Home could pursue a direct common law contract claim against Maersk in the absence of any contractual privity, it is not entitled to the damages it seeks in this appeal. To the extent that American Home has any right of recovery against Maersk in contract, its claims would remain subject to the liability limitations appearing in Maersk's bill of lading and COGSA.

Finally, the district court did not and cannot erroneously deny summary judgment on claims that were never submitted to the district court for consideration. As Judge Gardephe's ruling pointed out, American Home moved for summary judgment on the basis that Maersk was statutorily liable under the Carmack Amendment. In Carmack, carriers are subject to strict liability, with the carrier having to prove it was **not** negligent once the shipper establishes its *prima facie* case. Under New York negligence law, the burden of proof would shift to American Home to affirmatively establish BNSF's negligence and the amount thereof. If Maersk must now defend against a contractual claim based on BNSF's negligence, it should be permitted to prepare and present a defense to such a claim.

In sum, American Home's appeal must be denied because it cannot litigate the new theories it now advances on appeal. And even if it could, American Home would not be entitled to the relief it now seeks.

13

## **ARGUMENT**

This case presents the often repeated scenario in which a cargo owner agrees to substantially limit the carrier's liability in exchange for a deeply discounted freight rate, and then purchases insurance on the cargo instead.[7] After the cargo is damaged in transit, and the cargo owner's insurance claim has been paid, the cargo owner's insurance company ignores its insured's bargain, and brings suit for the full value of the damaged cargo under the strict liability terms of the Carmack Amendment to the Interstate Commerce Act ("Carmack" or "Carmack Amendment").

Here American Home made a tactical decision early in this case to avoid the liability limitations of pursuing a maritime breach of contract claim against Maersk, and to instead vigorously pursue a claim solely pursuant to the Carmack Amendment. This decision allowed American Home to pursue a strict liability claim, and avail itself of the restrictive requirements of 49 U.S.C. § 10502 so as to

---

[7] *See generally Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 19 (2004) (observing that it is "common in the industry" for a shipper to accept a contractual liability limitation below the true value of its freight in order to obtain lower shipping rates, then separately insure the freight for its full value); *Travelers Indem. Co. v. Vessel Sam Houston*, 26 F.3d 895, 900 (9th Cir. 1994) ("it is always in the best interest of a shipper's insurance company to argue that the shipper was denied a fair opportunity to opt for higher liability. . . in an attempt to shift . . . the burden of loss it was paid to insure."). Indeed, in cases such as this where the cargo owner does not identify the value of its freight on the bill of lading, carriers have no way to provide a freight rate commensurate with their potential liability exposure in the absence of contractual liability terms.

sidestep the contractual limitation of liability terms in the Maersk bill of lading. It also afforded American Home standing to sue Maersk in the absence of contractual privity between the parties.

This tactical decision, designed to maximize American Home's recovery beyond the contractual terms agreed upon by its insured, has now left American Home without a viable cause of action. And its attempts to create new legal theories on appeal are both procedurally improper and devoid of any subjective merit. Accordingly this Court must affirm the summary judgment granted to Maersk by the district court.

## I. Whether Maersk Assumed Contractual Liability for BNSF's Negligence Is A New Legal Theory That May Not Be Raised In The First Instance On Appeal

After litigating a Carmack Amendment claim for nearly six years, American Home now purports to be litigating a "a breach of contract case" under New York law. (Dkt. No. 4 at 5). Even though Judge Jones ruled, at American Home's insistence, that the Carmack Amendment is statutorily applicable and the governing legal regime (a ruling that is not being appealed), categorically absent from the latest briefing is any discussion of Carmack's applicability. American Home's fallback argument (asserted near the end of the district court proceedings), that Maersk somehow "contracted into Carmack liability" is now "an issue that need not even be resolved" (Id. at 22) (internal brackets omitted).

15

On appeal, the parties are now apparently litigating two brand new legal theories under *New York law*: (1) whether the derailment was caused by BNSF's *negligence*, and (2) whether Maersk contractually obligated itself to reimburse Crown for any losses arising out of BNSF's negligence. This Court has long held that such a transformation at the appellate stage is inappropriate, and American Home's appeal must be denied on this reason alone. *See*, *e.g.*

- *Murray v. City of New York*, 333 F. App'x 595, 599 (2d Cir. 2009) ("We will not entertain a new theory on appeal from a grant of summary judgment");

- *Chitkara v. New York Tel. Co.*, 45 F. App'x 53, 55 (2d Cir. 2002) ("Plaintiff has no more right to have new theories heard on appeal than on reconsideration, and this is not one of those rare cases where we think it necessary to deviate from the usual policy to avoid a manifest injustice.");

- *Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir. 1999) (stating that party challenging summary-judgment grant "will not be heard" to advance argument on appeal based on theory not raised below);

- *Walter E. Heller & Co. v. Am. Flyers Airline Corp.*, 459 F.2d 896, 902 (2d Cir. 1972) ("A court of appeals is not the proper forum for raising new issues such as this, nor is an appellant normally permitted to have the benefit of a new theory on appeal.").

American Home fails to acknowledge this transformation in legal theory, much less offer any explanation as to why its new, non-Carmack, theories should now be considered on appeal. Accordingly, Maersk respectfully submits that this Court must reject American Home's transparent attempt to litigate new legal theories on appeal that were never litigated in the trial court, and deny its appeal on that basis alone.

16

**II.    American Home's Contract Claims Are Preempted By Federal Statute**

It is also unnecessary to reach the merits of American Home's new theories because such claims are preempted by the Carmack Amendment. As this Court has explained, a court's "inquiry" into Carmack's statutory applicability "is always binary: 1) is the shipment covered by the Amendment; and 2) is the carrier covered by the Amendment?" *Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.*, 547 F.3d 351, 359-60 (2d Cir. 2008).[8]

Here Judge Jones's February 2011 ruling addressed the first prong of the Carmack inquiry and agreed with American Home's argument that Carmack governed American Home's claims for loss or damage for the shipments at issue. This ruling became "the law of the case", along with Judge Preska's ruling that, once applicable, "the Carmack Amendment provides the exclusive remedy for a shipper's compensation for actual loss or injury." (SPA-18).  Neither of the two aforementioned rulings have been appealed.

Because American Home has not argued in this Court that the trial court's rulings on Carmack's statutory applicability must be overturned, this Court must deny American Home's appeal on preemption grounds.  *See generally United States v. Barnes*, 107 F.3d 4 (2d Cir. 1997) ("Failure to include an argument in the appellate brief waives the argument on appeal").  It is well-established precedent of

---

[8] Abrogation on other grounds recognized by *Mitsui Sumitomo Ins. Co. v. Evergreen Marine Corp.*, 621 F.3d 215, 219 n.4 (2d Cir. 2010).

17

this Court that when Carmack applies, it provides the *exclusive* remedy for a shipper to recover from a carrier for freight loss or damage incurred during shipment. *See*, *e.g.*, *Cleveland v. Beltman N. Am. Co., Inc.*, 30 F.3d 373, 380-381 (2d. Cir. 1994). Indeed Carmack is the "single uniform regime for recovery by shippers directly from the interstate common carrier in whose care their items are damaged . . . by preempting the shipper's state and common law claims against a carrier for loss or damage to goods during shipment." *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 73, n.6 (2d Cir. 2001) (quoting *Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 117-18 (2d Cir. 1999)).

Once a court finds Carmack applicable to the shipment at issue, any other cause of action expressly or impliedly being asserted in the plaintiff's complaint becomes preempted as a matter of law. *See, e.g., Missouri Pacific R.R. v. Porter*, 273 U.S. 341, 346 (1927) ("state laws have no application [and] cannot be applied in coincidence with, as complementary to, or as in opposition to [the Carmack Amendment]."), *Project Hope*, 250 F.3d at 73, n.6 (both state and federal common law claims preempted); *Beltman,* 30 F.3d at 380-381 (same); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) (applying "complete preemption doctrine" and concluding that Carmack Amendment preempted claims of breach of contract, negligence, and Texas Deceptive Trade Practices Act).

American Home's briefing does not discuss Carmack's statutory applicability, or explain why the existing rulings in this case (not being appealed) holding Carmack applicable to these shipments would not require its new common law theories to be dismissed on preemption grounds. American Home also does not challenge the district court's determination, based on the law of this Court and the United States Supreme Court, that ocean carriers are not among the entities a cargo owner may sue under Carmack. (SPA 11 to 14) (citing *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2447 (2010) and *Rexroth*, 547 F.3d 351).

Carmack is the liability regime specifically chosen by American Home in this case, to the exclusion of other remedies. American Home also chose not to appeal the trial court's determinations finding Carmack applicable and the exclusive remedy for its damage. So there is no unfairness to American Home should this Court deny its appeal on the sole basis that Carmack, its chosen remedy, preempts the new breach of contract and negligence theories that American Home now seeks to litigate on appeal.[9]

---

[9] In making the argument that American Home's contract claims are preempted, Maersk does not concede that Judge Jones correctly determined that Carmack is the legal regime that governs this dispute. Indeed Judge Jones's ruling is an outlier, and appears to be the only opinion within this Circuit to find Carmack applicable to export shipments under a through bill of lading. *See*, *e.g.*, *Royal & Sun Alliance Ins., PLC v. Serv. Transfer, Inc.*, 2012 U.S. Dist. LEXIS 172307, 2012 WL 6028991 (S.D.N.Y. Dec. 4, 2012), *Hartford Fire Ins. Co. v. Expeditors*

### III. American Home Lacks Standing To Sue Maersk For Breach of Contract

Even if the Court were to proceed to consider the substantive merits of the new common law theories American Home advances on appeal, affirmance of Judge Gardephe's ruling would remain appropriate. First and foremost this is because American Home's insured, Crown, contracted with *Panalpina* for these shipments. Maersk is not a party to any of these contracts, and Crown is not a party to the generally-applicable fservice contract between Maersk and Panalpina, or to the bills of lading Maersk issued to its customer Panalpina. American Home's new theory therefore fails because its insured was never in privity of contract with Maersk, and American Home has no standing to sue Maersk for breach of contracts between Maersk and another entity.

It is "hornbook law" that only the parties to a contract can enforce it, and that they may only enforce a contract against other parties to the contract. *See Crabtree v. Tristar Auto. Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991), 2 Williston on Contracts §§ 273, 347, at 178-80, 793 (3d ed. 1959 & 1983 Supp.). On appeal, American Home argues that New York law applies to this dispute, courtesy of a choice of law provision appearing in Maersk's bill of lading. (Dkt. No. 42 at 20-23). Even assuming, *arguendo*, that this is correct, New York law

---

*Int'l of Wash.*, 2012 U.S. Dist. LEXIS 96974, 2012 WL 2861433 (S.D.N.Y. July 9, 2012). But Maersk accepts that Carmack's applicability is currently the law of the case, and Judge Jones's 2011 ruling is not being appealed by either party.

compels a finding that American Home's breach of contract action fails for lack of privity.

In New York, it has long been established that privity is essential to a contract claim. *See*, *e.g.*, *LaBarte v. Seneca Resources Corp.,* 285 A.D.2d 974, 728 N.Y.S.2d 618, 620 (4th Dept. 2001) ("Plaintiffs may not maintain a cause of action for breach of contract against those parties with whom they were not in privity."); *Logan–Baldwin v. L.S.M. General Contractors, Inc.,* 31 Misc.3d 174, 914 N.Y.S.2d 617, 619 (N.Y. Sup.Ct., Monroe Cnty. 2011) (citing *Seaver v. Ransom,* 224 N.Y. 233, 120 N.E. 639 (1918)); *Leonard v. Gateway II, LLC,* 68 A.D.3d 408, 890 N.Y.S.2d 33 (1st Dept. 2009); *CDJ Builders Corp. v. Hudson Group Constr. Corp.,* 67 A.D.3d 720, 889 N.Y.S.2d 64 (2d Dept. 2009). Generally, "a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*, 861 F. Supp. 2d 120, 128-29 (W.D.N.Y. 2012) (citing *Crabtree v. Tristar Automotive Group, Inc.,* 776 F.Supp. 155, 166 (S.D.N.Y.1991)).

Here Maersk transported the subject freight under the terms of a generally applicable service contract with its customer Panalpina, an NVOCC. (A-225, 937-38, 945-46). The service contract provides Panalpina (the "shipper" with respect to Maersk) with preferential pricing on specified shipping lanes in exchange for a

21

Panalpina's commitment to ship a specified minimum volume of cargo, and Panalpina's agreement to certain terms and conditions. (A-249 to 257). The service contract also incorporates the terms and conditions appearing Maersk's standard form bill of lading governing individual shipments. (A-254 at "Bill of Lading").

Not only is Crown a complete stranger to this contract, but the Service Contract contains express confidentiality language that generally prohibits both sides from even *disclosing* its terms and conditions to third parties like Crown. (*Id*. at "Confidentiality"). For obvious reasons, Panalpina would not wish for Maersk to contact Panalpina's customers and offer shipping terms directly (which would cut out Panalpina). Maersk would not want Panalpina to disclose preferential pricing to other intermediaries, which could be used as leverage in future negotiations. There is no evidence in the record to suggest that the specific identities of Panalpina's customers, such as Crown, were even *known* to Maersk at the time this service contract was executed.

The service contract also categorically prohibits Panalpina from assigning any of its rights under the service contract to third parties without Maersk's written consent. (*Id*. at 253 to 254 at "Assignment"). This anti-assignment language specifically prohibits assignment of all "rights or *liabilities*" in the contract. (*Id*. emphasis supplied). It also prohibits any other person from availing itself of the

22

"services, rates, or other terms" to which Maersk agreed in connection with the service contract. (*Id*.)

While it appears repeatedly in the joint appendix, there is no mention of the service contract in American Home's appellate brief. American Home instead focuses on the standard bill of lading terms and conditions that were incorporated into the service contract. (A-254, "Bill of Lading"). But there is no language in the service contract that would make incorporated terms, like those appearing in the standard bill of lading, a special exception to the anti-assignment provisions of the service contract or confer standing to sue under the bill of lading to Panalpina's customers.

Further, there is no evidence in the record, nor does American Home cite any, to support an argument that there was a separate contract between Crown and Maersk that would provide American Home with the right to file a direct breach of contract action against Maersk. As discussed, there is no record evidence that Maersk was even aware of Crown's existence at the time the electronic bills of lading were generated. While no bills of lading were physically issued for these shipments, the electronic bills that Maersk automatically generated identify only *Panalpina* as the shipper and customer with respect to Maersk. (A-235 to 236, 240 to 241, 246 to 247). In fact, the express terms of the service contract mandate that Panalpina be so named on all bills of lading. (A-253, "Shipper's Qualification").

23

The booking confirmations Maersk generated for these loads also identify Panalpina as the sole customer who booked the load. (*see*, *e.g.*, A-231 to 233). Crown is again a complete stranger.[10]

Accordingly, in the absence of an assignment, the only entity that has standing to bring a direct contract action against Maersk under New York law for breach of contract is *Panalpina*. There is no evidence in the record, and American Home's briefing does not argue, that either Crown or American Home ever received an assignment of rights from Panalpina – much less that Maersk ever gave its written consent to any assignment, as would be required under the terms of the service contract. In fact, Panalpina itself was a named defendant in this action until it was voluntarily dismissed by American Home.[11] (Dkt. No. 42 at p. 8, n.2).

The United States Supreme Court has recognized that the absence of privity of contract is a part of modern, efficient "industry practices." *Norfolk Southern Ry. Co. v. James N. Kirby, Pty Ltd*., 543 U.S. 14,34 (2004)). "Contracts reflect the new technology [*i.e.*, multimodal containers]; hence the popularity of 'through'

---

[10] Crown is identified in the dock receipts that Crown itself prepared, but there is no evidence in the record that these were ever given to Maersk in connection with these shipments, which never reached Maersk. Regardless, it has long been established that dock receipts are not contracts of carriage. *See*, *e.g.*, *The Capitaine Faure*, 10 F.2d 950, 954 (2d Cir. 1926).

[11] The terms ocean freight forwarder and NVOCC are often used interchangeably. As explained by this Court, "A freight forwarder . . . simply facilitates the movement of cargo to the ocean vessel." *Prima U.S. Inc. v. Panalpina, Inc.*, 223 F.3d 126, 129 (2d Cir. 2000)

24

bills of lading, in which cargo owners can contract for transportation across oceans and to inland destinations in a single transaction." *Id*. at 25. The lack of contractual privity between the carriers and the cargo owners is often a conscious economic choice made by the cargo owners from which they derive a concrete benefit. Indeed, it is to a cargo owner's advantage to arrange for transport from origin to destination at one time rather than to negotiate a separate contract for each separate leg of the journey. *Id*. at 25-26. But the tradeoff from receiving such a benefit is that (absent an assignment of rights) the cargo owner's remedy for common law breach of contract lies exclusively with its contractual counterparty – here the NVOCC. *See generally id*. at 35-36 (due to the absence of privity with carrier, shipper's contractual remedy was against freight forwarder for losses in excess of COGSA limits).

American Home's briefing completely ignores the question of standing and thus offers no basis for this Court to deviate from the established New York and United States Supreme Court precedent applicable to its new legal theory. Accordingly, even if the Court allows American Home to pursue a new breach of contract theory under New York law, and finds this new theory not preempted by Carmack, this breach of contract claim would afford no relief because American Home is not in privity of contract with Maersk. *See generally CNA Ins. Co. v. Hyundai Merch. Marine Co*., 747 F.3d 339, 372-73 (6th Cir. 2014) (dismissing

contract claims against non-contracting carriers due to the absence of any privity between those carriers and the cargo owner).[12]

## IV. Even If It Could Proceed With A Direct Action Against Maersk, American Home's Maximum Recovery Would Be Limited to $500 Per Package

Even if American Home had standing to sue Maersk for damage to cargo while in transit in the possession of a rail carrier, its damages would be limited by COGSA to $500 per package, or $18,500 total. On appeal, American Home has deemed irrelevant whether Maersk contracted into Carmack liability because the terms of its ocean bill of lading, when read in conjunction with the BNSF's International Transportation Agreement ("ITA"), "obligated" Maersk to compensate Crown for BNSF's negligence at a maximum of $250,000 per shipment. As a practical matter, this would render Maersk liable under negligence principles during domestic rail transportation and under COGSA during the sea portion of the journey under the same exact through bill of lading. This is in direct conflict with the express terms of the Maersk bill of lading and the policy objectives articulated by the United States Supreme Court.

---

[12] In an important distinction from the present matter however, the cargo owner in *CNA* contracted directly with the ocean carrier, Hyundai, rather than with an intermediary NVOCC like in this case. *Id*. at 343. So the cargo owner was in direct privity with the *ocean carrier* in *CNA*, unlike in this case.

**A.    The Limited Liability Terms Applicable to The Subject Shipments Limit Maersk's Liability To $18,500**

Maersk does not dispute that the cargo here was damaged during inland rail carriage on BNSF. So, if this is to be a garden variety contract case, Maersk does not dispute that Paragraph 6.2(d) would be a relevant liability provision.[13] As the trial Court observed, "Section 6.2(d) is a choice of law provision providing that, in the event a shipment of goods is damaged during carriage in the inland United States, Maersk's liability is to be adjudged according to its contract with BNSF and in accordance with New York law." (SPA-18).[14] American Home is correct that

_____

[13] As American Home argued for years in the district court action, Maersk may also limit its liability under Paragraph 6.2(a). (A-263 to 264, using conjunction "or" with respect to liability provisions). American Home now dismisses this provision on the basis that, as this Court has already determined, it does not extend Carmack contractually. (Dkt. No. 42 at 18). This is, of course, true; but the mere fact that this provision does not extend Carmack by contract does not render it invalid – especially now that American Home no longer believes Carmack is the governing legal regime.

With respect to paragraph 6.2(a)(i), unlike Carmack, COGSA is an "international convention" that cannot be departed from by private contract to the shipper's detriment. COGSA provides for a default liability limit of $500 per package. The ocean carrier and its customer may agree to a higher maximum limit of liability, but cannot agree to a maximum amount that is less than the $500 per package default. 46 U.S.C. § 30701, n.5.

Because the applicable liability limit is ultimately the same under either provision, Maersk will focus on paragraph 6.2(d) in order to directly address American Home's appellate arguments.

[14] American Home appears to concede on appeal (through the absence of any affirmative argument) that this provision does not contractually extend Carmack

27

the contract between Maersk and BNSF is the ITA between the carriers. (A-104). American Home is also correct that ITA incorporates the BNSF Rules and Policies Guide ("BNSF Rules") and that the agreed liability terms appear in the BNSF Rules.

But American Home's analysis strays when it comes to which liability terms appearing in the BNSF Rules are relevant to this shipment. American Home cites the $250,000 default limitation of liability, but completely omits any discussion of the specific limitation precisely applicable to the facts of this case. *Aramony v. United Way of America*, 254 F.3d 403, 413 (2d Cir.2001) ("it is a fundamental rule of contract construction that specific terms and exact terms are given greater weight than general language") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 203(c) (1981)).

Here it is undisputed that all three shipments were through shipments moved under the terms of a through bill of lading issued by Maersk. For such shipments, the BNSF Rules provide the following liability terms:

> If a shipment moves under the terms of a through intermodal ocean bill of lading with BNSF as a participating carrier, the liability of BNSF will be no greater than the ocean carrier issuing the bill of lading. The number of packages indicated in the "Total Number of

---

beyond its statutory limits to ocean carriers like Maersk – as was argued below. *See generally United States v. Barnes*, 107 F.3d 4 (2d Cir. 1997) ("Failure to include an argument in the appellate brief waives the argument on appeal").

Containers or Packages" section of the ocean bill of lading will be the maximum number of packages for calculation of BNSF's liability . . .

(A-187). By connecting BNSF's liability to the liability of the ocean carrier, and presuming that liability will be based on a total number of packages shipped, the BNSF Rules assume that COGSA and its default $500 per package limitation will be applicable. *See* 46 U.S.C. § 30701, n.5.

The liability limitation assumed in the BNSF Rules is precisely applicable here. Maersk was to perform ocean carriage of the cargo from California to Australia. COGSA would govern any loss or damage caused by Maersk while performing this ocean carriage, both statutorily (*see* id.) and by virtue of paragraph 6.2(b) of the bill of lading (A-264). Maersk's liability is therefore limited by contract and statute to $500 per package or $18,500 total.[15]

---

[15] The cargo here was shipped in three containers. The goods carried in container No. PONU 1663493 consisted of 1 forklift (strapped to a pallet) and 24 boxes of parts. Under the applicable case law, each of the 24 boxes is a COGSA package and the palletized forklift is a package – amounting to 25 COGSA packages in total for this container. *See Standard Electrica, v. Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft*, 375 F.2d 943 (2d Cir. 1967). Container INBU 3564931 contained 7 palletized forklift machines, which amounts to 7 COGSA packages. *See* id. Container OCLU 1508005 was transporting 5 forklifts, two of which were transported on pallets and the other two were shrink wrapped in plastic. This amounts to 5 COGSA packages. *See* id; *see also Aluminios Pozuelo Ltd. v. S. S. Navigator*, 407 F.2d 152 (2d Cir. 1968).

With 37 COGSA packages in total (25 + 7 +5), at a limitation of $500 per package, Maersk's maximum liability for these three shipments is $18,500.

**B.**     **Application Of COGSA Liability Terms Is Consistent With The Policy Objectives Articulated By The U.S. Supreme Court**

The legal regime that American Home implicitly advocates here, that state law principles apply to Maersk for inland transportation of an international intermodal shipment under a through bill of lading, and COGSA applies while at sea, is also in direct conflict with the policy goals articulated by the United States Supreme Court. Indeed, such a liability regime would, in the words of the United States Supreme Court, "undermine international container-based transport." *Regal-Beloit*, 130 S. Ct. at 2447.

For through shipments transported under a single bill of lading, the Supreme Court sought to promote a uniform legal regime which would avoid having "one set of liability and venue rules would apply when cargo is damaged at sea (COGSA) and another . . . when the damage occurs on land (Carmack)." *Id*.  To do otherwise would destroy the statutory efforts to achieving a single, uniform liability regime for intermodal containerized shipments transported under a single through bill of lading. "Rather than making claims by cargo owners easier to resolve, establishing two separate liability regimes for the same shipment would create an immense burden on the court that 'often could not be met . . . [and] would undermine international container-based transport.' *Id*.

Further, in *Kirby*, the Supreme Court was confronted with a similar intermodal shipment under a through bill of lading where Carmack (for unspecified

30

reasons) did not apply.  *Kirby*, 543 U.S. at 32-35. The Court found that maritime contract law and COGSA were the applicable legal liability regime. As the Court explained, "so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage".  *Id*. at 27.  Identical to this case, the ocean carriage in *Kirby* also involved ocean carriage between Australia and the United States (though different ports within the United States, and as an import shipment), so there can be no argument that the ocean carriage required by the Maersk through bills of lading was insufficient to trigger the policy concerns articulated by the Supreme Court.

Accordingly, as a result of the specific contractual terms in the Maersk bills of lading, the BNSF Rules incorporated by these bills, and the policy objectives articulated by the United States Supreme Court, Maersk's total liability can be no more than $18,500.  Thus, even if this Court were to proceed to the merits of American Home's new arguments on appeal, and find them not preempted, American Home would not be entitled to recover in the amount it seeks.[16]

---

[16] Application of New York law under Rule 6.2(d) does not change this result. *Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 193 (2d Cir. 1989) (terms limiting a carrier's liability to $500 per package are generally valid and enforceable despite carrier negligence under New York law).

**V.    If American Home Wishes to Litigate The Issue of BNSF's Negligence Under New York Law, This Matter Should Be Remanded To The District Court So That Maersk Can Develop Evidence And Present A Defense To These New Claims**

As discussed, in 2011 Judge Jones accepted American Home's argument that Carmack is the governing legal liability regime for the shipments at issue.  The parties therefore proceeded to litigate a case that is vastly different from the negligence-based scheme that American Home now advocates.  Under Carmack, carriers are subject to strict liability, and the cargo owner establishes a *prima facie* case, when it shows (1) delivery in good condition; (2) arrival in damaged condition; and (3) the amount of damages.  *Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137-38 (1964). Upon such a showing, the burden shifts to the carriers to show both that they were *free from negligence* and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.  *Id*.  The difference between Maersk having to prove the *absence* of any negligence by BNSF, and American Home having the burden to prove an affirmative negligence claim under New York law, is highly significant and would require remand.  There also remains significant questions about the amount of American Home's damages, which would (as discussed above) be limited to a maximum of $18,500.

In an effort to hold Maersk contractually liable for BNSF's negligence, American Home cites to certain testimony from BNSF (which is not a party to this appeal) suggesting that the derailment was caused to some degree by BNSF.

32

Maersk does not dispute that BNSF likely was negligent in some amount in connection with this derailment, as the derailment occurred while the freight was in BNSF's custody. So there was little incentive to aggressively litigate the issue of causation and the comparative degree of the parties' respective culpability for the damage in a Carmack regime predicated on strict liability and the absence of any carrier negligence whatsoever.

But if American Home is permitted to now set aside Carmack, and litigate the issue of BNSF's negligence under New York law (for which American Home claims Maersk is contractually responsible), *American Home* must establish three elements to prove BNSF's negligence: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *See*, *e.g.*, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). If American Home's evidence is insufficient as a matter of law to carry its burden of proof on even one of the three elements of the negligence cause of action by a preponderance of the admissible evidence, summary judgment must be entered in favor of Maersk. *See*, *e.g.*, *Rothstein v. City of New York*, 2011 WL 3273473 (S.D.N.Y. July 29, 2011).

In New York, the first element of a negligence cause of action—that a defendant owes a duty of care to the plaintiff—involves a threshold legal inquiry. *Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir.2010). "The threshold question in any

33

negligence action is: does defendant owe a legally recognized duty of care to plaintiff?" *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001). And under either federal maritime law or New York law, a plaintiff cannot maintain a tort cause of action based on a defendant's breach of duties that arose solely out of their contract. *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1283 (2d Cir.1994) (citing *East River S.S. Corp. v. Transam. Delaval Inc.*, 476 U.S. 858, 872–73 (1986) (federal maritime), and *Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (New York)).

It is undisputed that the duties of Maersk, and the downstream carriers participating in the shipments here, arose out of contract – whether the service contract, the bills of lading, or the separate ITA agreement between Maersk and BNSF. So American Home cannot pursue a cause of action predicated on BNSF's negligence because neither BNSF nor Maersk would have owed any duty in tort to American Home or its insured. *See CNA Ins. Co.*, 747 F.3d at 371 (dismissing tort law claims because of contractual duty in service contract).

And even if American Home had a cognizable negligence claim against BNSF, Maersk should also be entitled to litigate BNSF's comparative fault under New York law. N.Y. C.P.L.R. § 1411 (setting forth New York's pure comparative fault rule). While American Home cites to certain deposition testimony

34

concerning *Crown* and *BNSF's* (no longer a party to this case) opinions about this derailment, those opinions are not binding on or admissions by *Maersk*.

Further the record shows that clear issues of fact remain as to the amount of damages under any legal regime. As noted in the survey reports cited in American Home's brief, damage to the cargo was determined based on hearsay statements and a visual inspection of the exterior of the cargo. But, as the survey reports also state, a "proper evaluation" would require dismantling the cargo and having it inspected by an experienced team of professionals. (A-284 to 286). There is no indication that this was ever done here.

Such visual inspections, without actually testing even a representative sampling of the damaged freight, have frequently been found insufficient under in cargo loss cases (typically involving Carmack). For example, in *Nipponkoa Ins. Co. v. Towne Air Freight, LLC*, a shipment of thirty-five cartons of IBM computers was damaged in transit when a motor carrier's driver "dozed off at the wheel, lost control of the truck, and crashed it into a ditch." 2009 U.S. Dist. LEXIS 93525, *13-14 (E.D. Mo. Oct. 7, 2009). As here, the receiver of the freight did not inspect the cartons it perceived to be damaged and ascertained the condition of its freight at destination based on the "crushed, torn, and dented condition" of the exterior packaging. *Id*.

35

The freight insurer subsequently brought suit against the carrier and moved for summary judgment. In response, the carrier conceded that some of the cartons of computer equipment arrived in damaged condition. But it argued that because the receiver of the freight did not actually open the cartons or inspect their contents, the only actual damages may have simply been "cosmetic damages to the exterior cartons and packaging materials." *Id*. at 14. The carrier therefore argued that the insurer was unable to prove a prima facie case of liability because it was unable to establish the amount of its actual damages. The district court agreed, and held that "[t]he amount of damage is an issue of fact for the jury." *Id*.

Accordingly, if the Court accepts American Home's attempts on appeal to transform this case from a statutory Carmack dispute to a contract/negligence hybrid action under state law, this matter must be remanded so that Maersk may prepare and present a defense to these new legal theories. And due to the contractual limitations of liability, any recovery by American Home must be subject to the $500 per package limitation of liability ($18,500 total).

## VI.  American Home's Arguments Concerning Whether BNSF Was Properly Dismissed By Stipulation Are Moot

It is unclear why American Home raises the issue presented in paragraph V of its appellate brief. BNSF is not a party to this appeal, and American Home concedes that "the presence of BNSF in this litigation is not necessary for [American Home] to obtain full recovery on its cargo claim from Maersk." (Dkt.

36

No. 42 at 31; *see also* p. 17, n.3). American Home also acknowledges that it is prohibited from pursuing a contract claim against BNSF. (Dkt. No. 42 at 5); *see also Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165 (2d Cir. 2014) (upholding contractual limitation prohibiting suit against downstream rail carrier). Regardless, American Home's arguments that BNSF should not have been dismissed by stipulation are both meritless and pointless.

Even if this case now presents a common law contract/negligence claim under *New York law* (rather than a Carmack claim), as American Home now contends, the impleader rules applicable exclusively to maritime claims would continue to have no application in this case. *See*, *e.g.*, *Galt G/S v. Hapag-Lloyd A.G.*, 60 F.3d 1370 (9th Cir. 1995) (finding that Rule 14(a), not 14(c), governs third party indemnity claims outside the Court's admiralty or maritime jurisdiction); *Royal Ins. Co. of Am. v. Zygo Corp.*, 212 F.R.D. 444, 446 (D. Conn. 2003) ("[t]he impleader provisions of Rule 14(c) . . . apply *only* to cases in which the plaintiff has asserted an admiralty or maritime claim within the meaning of Rule 9(h)") (emphasis supplied).[17] So American Home would continue to have no

---

[17] For standard impleader claims under Rule 14(a)(3), it is hornbook law that "until one asserts a claim against the other . . . the plaintiff and third-party defendant simply are not opposing parties." 3 JAMES W. MOORE, Moore's Federal Practice § 14.06[1]; *see also Epicentre Strategic Corp. - Mich. v. Cleveland Constr.*, 2007 U.S. Dist. LEXIS 15971, 2007 WL 715297 (E.D. Mich. Mar. 7, 2007) ("The joinder of a third-party defendant in and of itself does not assert a claim as between

standing to object to BNSF's dismissal. *See*, *e.g.*, *Thorp v. Scarne*, 599 F.2d 1169, 1171, n.1 (2d Cir. 1979) (observing that "[t]he law is settled that the filing of a notice of dismissal . . . automatically terminates the lawsuit. No action by the court is necessary to effectuate the dismissal."); *General Foods Corp. v. Jay V. Zimmerman Co.*, 1990 U.S. Dist. LEXIS 10156, 1990 WL 115714 (S.D.N.Y. Aug. 3, 1990) (a "stipulation, signed by the parties to the third party action, is effective to dismiss the third party action without approval of the Court, and thus plaintiff does not have standing to object to it").

Regardless, the Order granting BNSF's dismissal from this case by stipulation is not among the Orders that American Home seeks to have overturned on appeal. (Dkt. No. 1). And it would now be far too late for American Home to now appeal this ruling, or join BNSF in this appeal (and allow BNSF to present a defense). *See* Fed. R. App. P. 4(a)(1) ("the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from"). So the question of whether BNSF should be forced to rejoin this case as a defendant and appellee is now moot, in addition to being irrelevant.

---

the plaintiff and the third-party defendant, but is the assertion of a right by the original defendant against someone not a party to the action.").

## VII.  Conclusion

For six years, American Home litigated this matter before the district court as a claim under the Carmack Amendment.  American Home primarily argued that Carmack applied by statute to the shipments.  And when that chosen liability regime left American Home without a remedy against Maersk, American Home reversed course and argued that Maersk somehow *contracted into* Carmack liability.  On appeal, American Home seeks to eschew Carmack altogether and chart a new course based on the contract and negligence law of the State of New York.  Such attempts to litigate new theories on appeal have been repeatedly rejected by this Court for decades, and must be rejected again here.

American Home also does not seek to have overturned the 2011 ruling that found (at American Home's urging) Carmack to be the applicable regime for its claims.  In the absence of a ruling overturning Judge Jones' finding that Carmack is the applicable legal regime, American Home's new state law legal theories must be dismissed on preemption grounds without even reaching their merits.

But even if the Court were to proceed to the merits of these entirely new claims, American Home would not be entitled to the relief it seeks.  Its new state-law contract claim fails for lack of privity.  Notwithstanding this fatal flaw, American Home's claims are contractually limited to the $500 per package provided by COGSA.  American Home's demand for summary judgment is also

39

premature, as Maersk has had no opportunity prepare and present a defense to common-law liability under New York state law.

At some point, American Home's repeated transformation of its claims must come to an end. Maersk is entitled to know the substance of the claims being asserted against it. If American Home wished to litigate a claim for breach of contract, its cause of action was against Panalpina, the party with which it contracted for each of the shipments. It may not avoid the consequences of its decision to dismiss Panalpina, and pursue a strict liability action under Carmack, by continuing to litigate new claims against Maersk until it finds one with legal merit. Maersk respectfully submits that American Home's appeal must be denied in its entirety.

Respectfully submitted this 23rd Day of October, 2014

**KEENAN COHEN & MERRICK P.C.**

By: <u>s/ Christopher J. Merrick</u>
    Paul D. Keenan
    Christopher J. Merrick
    One Pitcairn Place, Suite 2400
    165 Township Line Road
    Jenkintown, PA 19046
    Phone: (215) 609-1110
    Fax: (215) 609-1117
*Attorneys for Defendant-Appellee*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as it contains 9,941 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 and 14-point Times New Roman font.

Respectfully submitted,

**KEENAN COHEN & MERRICK P.C.**

By: <u>s/ Christopher J. Merrick</u>
Paul D. Keenan
Christopher J. Merrick
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, PA 19046
Phone: (215) 609-1110
Fax: (215) 609-1117

*Attorneys for Defendant-Appellee*

Dated:   October 23, 2014